UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                           |   |                             |
|---------------------------|---|-----------------------------|
| JOHN CONSOLO,             | ) |                             |
|                           | ) |                             |
| Plaintiff,                | ) |                             |
|                           | ) |                             |
| v.                        | ) |                             |
|                           | ) | Civil Action No. 15-11840   |
| BANK OF AMERICA et al.,   | ) |                             |
|                           | ) |                             |
| Defendant.                | ) |                             |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                                                                        May 2, 2017

### I. Introduction

Plaintiff John Consolo ("Consolo") filed this lawsuit against Defendants Bank of America and NationStar Mortgage LLC ("Defendants") bringing claims for breach of contract (Count I), promissory estoppel (Count II), negligent misrepresentation (Count III), breach of implied covenant of good faith and fair dealing (Count IV) and violation of Mass. Gen. L. c. 93A (Count V). D. 1-2. Defendants have moved for summary judgment. D. 50. For the reasons stated below, the Court ALLOWS Defendants' motion.

### II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp.,

1

217 F.3d 46, 52 (1st Cir. 2000) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III. Factual Background

For purposes of this summary judgment motion, the Court will consider undisputed facts taken from the parties' Rule 56.1 statements.[1] Consolo is the son of Mary Consolo, who became owner of the property located at 262 East Eagle Street, East Boston, Massachusetts (the "Property") in 1984. D. 52-1 at 5 (Consolo's Deposition). In 1996, Mary Consolo transferred ownership of the Property to Consolo and his brother, Gaetano Consolo, by quitclaim deed. Id. at

---

[1] In their reply brief, Defendants urge this Court not to consider Consolo's Rule 56.1 statement of undisputed facts, arguing that his statement is primarily based upon allegations set forth in his verified complaint. D. 54 at 2-3. Consolo's Rule 56.1 statement, D. 53-1, does, however, include references to his deposition and reliance upon a verified complaint, "the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e)." Francois v. Putnam Investments, LLC, 34 F. App'x 395, 398 (1st Cir. 2002) (quotations and citations omitted). Thus, to the extent Consolo's statement is based upon admissible evidence in his verified complaint and his deposition, the Court has considered them.

2

13-14; D. 52-2 at 72. In doing so, Mary reserved a life estate for herself in the Property. D. 1-2 at 6. In 2000, when Mary was 85 years old, she signed a power of attorney appointing Consolo to manage her affairs. Id. At that time, Consolo resided at an apartment on the Property (and he continues to live there). Id.; D. 52-1 at 5.

In 2009, the Consolos decided to seek a home equity conversion loan (also known as a reverse mortgage) (the "Loan") secured by the Property. D. 1-2 at 7. At or about this time, Gaetano Consolo, gave Consolo a power of attorney to allow him to apply for the Loan on Gaetano's behalf. Id. at 7-8. Consolo called Bank of America and spoke with Tim Keough ("Keough"), to discuss whether his family would be eligible to obtain the Loan. Id. The two communicated about the Loan solely through telephone and e-mail. Id. Initially, Consolo applied for the Loan on the Property in Gaetano's name. Id. at 8; D. 52-1 at 33. Consolo's objective from the beginning of this process was to secure a Loan that would also allow Mary, Gaetano and himself to live in the Property until they died. D. 52-1 at 32. Understanding that his family could maximize the cash from the Loan by basing it on Mary's age as opposed to Gaetano's age, D. 1-2 at 8,[2] Consolo decided to apply for the Loan on the Property in Mary's name and again completed the Loan counseling over the phone. Id.

To effectuate the Loan, Keough sent Consolo a packet of documents to sign. Id. at 9. The adjustable rate home equity conversion mortgage (the "Mortgage") stated the following:

> THIS MORTGAGE ("Security Instrument") is given on April 24, 2009 ("Date"). The mortgagor is John G. Consolo and Gaetano F. Consolo, as tenants in common and Mary Consolo, reserving a Life estate whose address is 262 East Eagle Street East Boston, MA 02128 ("Borrower").

---

[2] As a matter of law, Consolo, age 61 at the time, did not qualify for the Loan because a borrower must be 62 or older. 24 C.F.R. § 206.33. Although Consolo argues, in his opposition, D. 53 at 7, that technically there are a category of reverse mortgages that he would have qualified to receive, there is no admissible evidence that this was the case here. See D. 54 at 5; see also D. 52-2 at 33.

3

D. 52-2 at 23. On the signature page of the Mortgage, the document read:

> BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

D. 52-2 at 32. Underneath this statement, Bank of America included signature lines for each of the three Consolos with their preprinted names underneath each line: "Mary Consolo, by John G. Consolo, her attorney in fact;" "John G. Consolo, as remainderman;" and Gaetano F. Consolo, remainderman, by John G. Consolo, his attorney in fact." Id. Consolo signed the Mortgage on behalf of all three. Id. The Mortgage also contained the following acceleration clause:

> **9. Grounds for Acceleration of Debt**
>
> **(a) Due and Payable**. Lender may require immediate payment-in-full of all sums secured by this Security instrument if:
>
> > (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or
> >
> > (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate, (or retaining a beneficial interest in a trust with such an interest in the Property).

Id. at 26 (bold in the original). The Adjustable-Rate Note Home Equity Conversion (the "Note"), however, only listed Mary Consolo as the borrower and only required Mary's signature, which Consolo signed on her behalf with the power of attorney. Id. at 102-04. Additionally, the Note contained a clause that mirrored the acceleration clause found in the Mortgage. Id. at 118. In addition to the Note (which was incorporated by express reference in the Mortgage, id. at 23), there were numerous other closing documents that also only listed Mary as the borrower (although signed by Consolo on her behalf with her power of attorney) to close the Loan. These documents

4

included the Residential Loan Application for Reverse Mortgages, HUD/VA Addendum to Uniform Residential Loan Application; Good Faith Estimate of Settlement Charges; Settlement Statement; Third Party Contact Form; Errors and Omissions/Compliance Agreement; Personal Liability Notice; Flood Hazard Determination; and Notice of Right to Cancel. D. 52-2 at 87, 90, 91, 93-101, 119.

After receiving the Loan documents and prior to signing them, Consolo called Keough to confirm that his understanding of the identification of him on the Mortgage as "remainderman" and that the terms of the Mortgage would allow him to stay in the Property following the death of his mother. D. 52-1 at 33-34. Keogh confirmed Consolo's understanding and Consolo then signed the documents. Id. In February 2012, Mary Consolo passed away. Id. at 25. Bank of America sent Consolo a letter informing him that the acceleration clause of the Mortgage and Note had been triggered by Mary's death and that the Loan was due in full, which Consolo acknowledged receiving. Id. After the instant action was filed, Bank of America and Nationstar attempted to foreclose on the Property. Id. at 37, 39.

## IV. Procedural History

Consolo instituted this action on April 23, 2015 in Suffolk Superior Court, D. 1-2 at 4, and Defendants removed the case to this Court. D. 1. Defendants have now moved for summary judgment. D. 50. The Court heard the parties on the pending motion and took the matter under advisement. D. 60.

## V. Discussion

### A. Breach of Contract

Consolo brings a breach of contract claim against Defendants, arguing that he was a borrower on the Loan and that Defendants breached the agreement by accelerating the Loan and

5

attempting to foreclose on the Property while he remained alive and resided as a resident at the Property. D. 53 at 4. Defendants counter that the terms of the Loan are clear that Mary Consolo was the sole borrower and, therefore, the Loan became due and payable upon her death. D. 51 at 8.

When evaluating a breach of contract claim under Massachusetts law, courts must first assess whether the contract provision at issue is ambiguous, which is a question of law. Barclays Bank PLC v. Poynter, 710 F.3d 16, 21 (1st Cir. 2013). "To answer the ambiguity question, the court must first examine the language of the contract by itself, independent of extrinsic evidence concerning the drafting history or the intention of the parties." Bank v. Thermo Elemental Inc., 451 Mass. 638, 648 (2008). Language is ambiguous "only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." Gemini Inv'rs Inc. v. AmeriPark, Inc., 643 F.3d 43, 52 (1st Cir. 2011) (quoting Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998)). In considering whether a contract is ambiguous, the Court notes that it must read the contract "in a reasonable and practical way, consistent with its language, background, and purpose." Bukuras v. Mueller Grp., LLC, 592 F.3d 225, 262 (1st Cir. 2010).

The crux of Consolo's breach of contract claim is that the wording of the Mortgage signed by Consolo, his mother and his brother is unclear. The Mortgage states that "[t]he mortgagor is John G. Consolo and Gaetano F. Consolo, as tenants in common and Mary Consolo, reserving a Life Estate, whose address is 262 East Eagle Street East Boston, MA 02128 ("Borrower")." D. 52-2 at 23. The Mortgage also states that the Loan may be accelerated only if one of the borrowers dies and no other "surviving borrower" uses the Property as his or her principal place of residence. Id. at 26. As such, Consolo argues, the plain language of the Mortgage demonstrates that there was more than one borrower on the loan or, alternatively, that the language is ambiguous.

6

The Court, however, must take "the words [of the Mortgage] within the context of the contract as a whole, rather than in isolation." Barclays Bank PLC, 710 F.3d at 21. "[W]hen several writings evidence a single contract or comprise constituent parts of a single transaction, they will be read together." F.D.I.C. v. Singh, 977 F.2d 18, 21-22 (1st Cir. 1992); Matthews v. Planning Bd. of Brewster, 72 Mass. App. Ct. 456, 463 (2008) (noting that "'interlocking documents [that] are part of a single transaction and are 'interrelated in purpose,' must be read together to effectuate the intention of the parties'") (internal citation omitted). Here, the Loan was effectuated by the Mortgage (providing a security in the Property to Bank of America) and the Note (providing the loan by Bank of America to the borrower). Mary Consolo, moreover, was the borrower on the Note (signed by Consolo as her attorney in fact) and was listed as the borrower on the other closing documents for the Loan which were part and parcel of the contract transaction and, therefore, constitute the workings of a single transaction. See Chase Commercial Corp. v. Owen, 32 Mass. App. Ct. 248, 250-51 (1992) (construing a guaranty and contemporaneous loan and security agreements as part of one transaction and reading them together even though the Guaranty did not incorporate the other documents by reference).[3] In each of these other closing documents, no one other than Mary was listed as the borrower on the Loan. See D. 52-2. Moreover, each of these documents (including the Mortgage) was signed on the same day, April 24, 2009, and Consolo

---

[3] Consolo argues that this case is inapplicable here because a guaranty agreement is necessarily subject to another agreement and, therefore, even if the guaranty agreement does not reference other documents like loan and security agreements, those documents would need to be viewed as part of the transaction to give the guaranty agreement effect. D. 53 at 6. Consolo maintains that the Mortgage and Note here are separate contracts that do not need to be read together to give each other effect. Id. Case law in the Commonwealth, however, dictates that the documents must be read together when they are close in temporal space and are "closely interrelated." Chelsea Indus., Inc. v. Florence, 358 Mass. 50, 55 (1970). That is exactly the situation presented here. Furthermore, the Mortgage here clearly contemplated the operation of the Note and makes express reference to the Note, see D. 52-2 at 23-33, and these documents together effectuated the Loan transaction between the parties.

was afforded the opportunity to inspect each document prior to affixing his signature to the various papers. D. 52-1 at 39. The only document that did not list Mary solely as the borrower was the Mortgage. Significantly, however, the Mortgage qualified Consolo and his brother as "remainderman." D. 52-2 at 32. As the Defendants point out, federal law requires that where a mortgagor has a life estate in the Property (as Mary did here), the other owners (those holding a future interest or remainder in the estate as the Consolo brothers did here) must consent to the transaction. D. 51 at 9-10 & n.2 (citing 24 C.F.R. § 206.35). This qualification, coupled with the fact that all other documents were signed by Mary (through Consolo as her attorney in fact) as the borrower demonstrates that Consolo was not considered a borrower under the terms of the Loan. See Williams v. Nationstar Mortg., LLC, No. 13074566, 2015 WL 6407493, *4-5 (Pa. Ct. Cm. Pl. Sept. 14, 2015) (ruling that an individual who signed a reverse mortgage as attorney-in-fact for mother and personally as remainderman was not a borrower under the terms of the reverse mortgage loan). Because the Court must view the Mortgage in conjunction with the other Loan documents including the Note, the Court holds that the contract may not be viewed as ambiguous since the clear intent was that Mary Consolo was the borrower for the Loan transaction. The Court, therefore, ALLOWS the Defendants' motion for summary judgment as to Consolo's breach of contract claim.

### B. Promissory Estoppel

Consolo next claims that when he decided to enter into the Loan, he reasonably relied on Keough's promise that Bank of America would not foreclose on the Property so long as he was alive and lived on the Property. D. 1-2 at 13. To prevail on a promissory estoppel claim, Consolo must show: 1) a representation intended to induce a course of conduct on the part of the person to whom the representation was made; 2) reasonable reliance upon the representations by that party;

8

and 3) detriment to that party as a result of the reliance.  Hall v. Horizon House Microwave, Inc., 24 Mass. App. Ct. 84, 93-94 (1987); Cellucci v. Sun Oil Co., 2 Mass. App. Ct. 722, 728 (1974).

Defendants maintain that it was unreasonable for Consolo to have relied upon Keough's alleged oral representations when they conflicted with the express terms of the Loan transaction. D. 51 at 12.  Generally, "a person who is able to read a document but fails to do so when the opportunity is afforded is not entitled to have that document set aside on the grounds that she was misled into signing a paper different from that which she intended to sign, at least in the absence of evidence that she was induced by the other party to sign such a document without reading it." Taunton Fed. Credit Union v. Weiner, 76 Mass. App. Ct. 1128 (unpublished), 2010 WL 1708814, at *1 (April 29, 2010).  That is, where "a person can read, and is not prevented from reading what [he] signs, [he] alone is responsible for [his] omission to read what [he] signs."  Id.  Defendants argue that even if Keough misrepresented the contractual terms of the mortgage to Consolo and thereby induced Consolo to enter into the contract, there is no viable promissory estoppel claim because Consolo had ample time to review the loan documents and, had he done so properly, he would have realized he was not actually a borrower.  D. 51 at 12.

In support of their position, Defendants rely upon Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459 (2003).  In Kuwaiti, Plaintiff had initially reached an agreement with Defendant's representative to purchase particular computer parts, the terms of which were summarized in a price quotation that Defendant's representative provided to Plaintiff.  Id. at 461. The quotation, however, contained qualifying language that it was "an invitation to offer only" and that "[a]ny contract resulting from the quotation must be accepted at [Defendant's] Corporate offices by a duly authorized representative of [Defendant]."  Id. at 462.  At Plaintiff's request, Defendant's representative also drafted a purchase order that incorporated the terms of the

9

quotation, and both parties signed the purchase order. Id. at 462-63. Defendant subsequently reneged on the terms of the quotation and purchase order and Plaintiff brought suit for damages based on negligent misrepresentation. Id. at 463-64. The court ruled against Plaintiff, concluding that it was unreasonable for Plaintiff to have relied on the quotation Defendant's representative had provided "because it conflicted with the qualifying language of [the] quotation." Id. at 468. The court noted that "'if a mere cursory glance would have disclosed the falsity of the representation, its falsity is regarded as obvious'" and reliance is unreasonable as a matter of law. Id. (internal citation omitted)

Defendants also direct the Court to Taunton Fed. Credit Union v. Weiner, 2010 WL 1708814, at *1. In Weiner, a mother alleged that her son, who had no legal interest in her home, committed fraud by misrepresenting the nature of a loan document he presented to her. Id. While he claimed it would merely refinance the original mortgage on her mobile home to a more favorable interest rate and that it would not increase the outstanding loan amount, his representations were false. Id. The mother did not read the document at all prior to signing it, but argued that the contract should be considered invalid. Id. The court ruled, however, that the mother "was not deceived as to the true nature of the loan document and was not prevented from having a meeting of the minds with the credit union with respect thereto." Id. Thus, the court held, "the son's fraud upon Weiner does not make the contract unenforceable against the credit union." Id.

Consolo states that he received the Loan documents and then called Keough to ask what the term "remainderman" meant and Keough responded "exactly what it says, remain . . . once your mother passes, you [and your brother] remain in the house." D. 52-1 at 33. While the plaintiffs in Kuwaiti and Taunton did not question the whether the written terms conformed to the

oral representations they received in the manner that Consolo did, this distinction is insufficient to render Consolo's reliance on Keough's statements reasonable. The doctrine of promissory estoppel is designed to create an enforceable promise in the absence of consideration or an otherwise valid contract. R.I. Hosp. Tr. Nat'l Bank v. Varadian, 419 Mass. 841, 850 (1995) (citing Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757, 760-61 (1978)). Here, however, there is an enforceable contract which, for the reasons already discussed, directly conflicts with the promise that Consolo now seeks to enforce. Viewed in this light, the Court cannot find Consolo's reliance on Keough's statements to be reasonable. See Taunton, 76 Mass. App. Ct. at 1128; Kuwaiti, 438 Mass. at 468; see also Wilton Props. II, Inc. v. 99 W., Inc., No. 2000000586F, 2000 WL 33170832, at *4 (Mass. Super. Nov. 1, 2000) (noting that "where a person [is] capable of reading and understanding a written instrument . . . his ignorance of the force and effect of the instrument is not available as a basis for equitable relief by way of cancellation" (quoting O'Reilly's Case, 258 Mass. 205, 208-09 (1927))). As such, the Court ALLOWS Defendants' motion for summary judgment on Consolo's promissory estoppel claim.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing

Consolo also claims that Defendants breached the implied covenant of good faith and fair dealing when they moved to foreclose on the Property while Consolo was still alive and living there. D. 1-2 at 15. "The covenant of good faith and fair dealing is implied in every contract." UNO Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). The covenant provides "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991) (quoting Druker v. Roland Wm. Jutras Assocs., Inc., 370 Mass. 383, 385 (1976)). "[T]he purpose of the covenant is to guarantee that the parties remain

11

faithful to the intended and agreed expectations of the parties in their performance." UNO Restaurants, 441 Mass. at 385. Defendants respond that the terms of the Loan make clear that they had a right to foreclose on the Property upon the death of Mary Consolo and, therefore, that they cannot have breached the covenant of good faith and fair dealing by acting on that right. D. 51 at 13.

Consolo has failed to oppose Defendants' summary judgment motion concerning his claim for breach of the implied covenant of good faith and fair dealing. D. 53-1; D. 54 at 8-9. Accordingly, he has waived any argument that there was such a breach. See Clinton v. Maxim Lift, Inc., No. CV 12-11072-MBB, 2015 WL 12683973, at *2 (D. Mass. Mar. 23, 2015); see also Vallejo v. Santini-Padilla, 607 F.3d 1, 7 n.4 (1st Cir. 2010) (affirming dismissal where "[p]laintiffs have not cited a single authority in support of their assertion that their failure to timely oppose the motion to dismiss did not constitute waiver"); Coons v. Indus. Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010) (observing that the "district court was 'free to disregard' the state law argument that was not developed in [plaintiff's] brief").

Even if Consolo had not waived his claim, however, his claim for breach of the implied covenant of good faith and fair dealing would still fail. It is true that a party may breach this covenant without breaching an express term of that contract. Marx v. Globe Newspaper Co., No. 99-2579-F, 2002 WL 31662569, at *5 (Mass. Super. Nov. 26, 2002); see Fortune v. Nat'l Cash Register Co., 373 Mass. 96, 101 (1977). Yet the "scope of the covenant is only as broad as the contract that governs the particular relationship," Ayash v. Dana–Farber Cancer Inst., 443 Mass. 367, 385 (2005), and it cannot give rise to "rights and duties not otherwise provided for in the existing contractual relationship." UNO Restaurants, 441 Mass. at 385. Consolo's claim for breach of the covenant of good faith and fair dealing is derivative of his breach of contract claim

and depends on an interpretation of the contract that would treat Mary, Gaetano and Consolo himself as joint borrowers. The Court has already granted summary judgment to the Defendants on his breach of contract claim because Mary Consolo was the sole borrower for the purpose of the Loan. The Court cannot, then, sustain Consolo's claim for breach of the implied covenant of good faith and fair dealing without contradicting the unambiguous terms and creating rights and duties not contemplated in the express terms of the Loan. Accordingly, the Court also ALLOWS Defendants' motion for summary judgment as to Consolo's claim of breach of the implied covenant of good faith and fair dealing.

### D. Chapter 93A Claim

Consolo next claims that Defendants engaged in unfair and deceptive actions in violation of Mass. Gen. L. c. 93A in connection with their representations concerning the Mortgage as well as their attempts to foreclose on the Property. D. 1-2 at 12-13. Chapter 93A proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. c. 93A, § 2. A consumer alleging a 93A violation must establish (1) that the defendant has committed an unfair or deceptive act or practice; (2) injury; and (3) a causal connection between the injury suffered and the defendant's unfair or deceptive act. Herman v. Admit One Ticket Agency LLC, 454 Mass. 611, 615-16 (2009). A practice is unfair if it falls "within…the penumbra of some common-law, statutory, or other established concept of unfairness; … is immoral, unethical, oppressive, or unscrupulous; [and] . . . causes substantial injury." Linkage Corp. v. Trs. of Bos. Univ., 425 Mass. 1, 27 (1997) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975)).

Defendants argue that summary judgment must be granted as to the 93A claim because to be found liable under the statute their "conduct must be not only [have been] wrong, but egregiously

13

wrong." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 41 (1st Cir. 1998). Defendants further argue that their conduct does not rise to this level of culpability because they were entitled to foreclose on the Property upon the death of Mary Consolo under the clear terms of the Mortgage. D. 51 at 13. Defendants' attempts to foreclose on the Property are not egregious in light of the terms of the unambiguous language in the Loan documents providing for acceleration of the loan upon the death of the borrower (Mary Consolo), as the Court has now ruled. To the extent that Consolo relies upon his promissory estoppel claim or misrepresentation claim for his c. 93A claim, this claim also fails since the Court has ruled, as discussed above and below, that Consolo's reliance upon any representations by Keough was not reasonable here and, therefore, it cannot be said that the Defendants' conduct was egregious in this regard.[4]

### E. Negligent Misrepresentation

Finally, Consolo claims that Defendant Bank of America engaged in negligent misrepresentation specifically in connection with Keough's inaccurate statements regarding the terms of the mortgage. D. 1-2 at 13-14. Defendants counter, however, that Consolo's negligent misrepresentation claim is, among other things, barred by the applicable statute of limitations. D. 51 at 14-15. Negligent misrepresentation claims are subject to the statutory three year limitations, Mass. Gen. L. 260 § 2A, see, e.g., Salois v. Dime Sav. Bank of N.Y., FSB, 128 F.3d 20, 24 (1st Cir. 1997); Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752, 761–62 (1st Cir. 1996); Max-Planck-Gesellschaft Zur Forderung Der Wissenchaften E.V. v. Whitehead Inst. for Biomedical

---

[4] Since the Court dismisses the c. 93A claim on substantive grounds, it does not reach Defendants' separate argument that this claim is time-barred. Consolo additionally maintains that his 93A claim is viable because the Defendants attempted "to foreclose on Mr. Consolo's home while [this] action is pending." D. 53 at 14. Such allegation, however, was not made in his complaint and is not properly before the Court on this motion for summary judgment. See D. 55 ¶¶ 44- 46; D. 55-1; D. 55-2.

Research, No. 09-CV-11116-PBS, 2010 WL 2428690, at *2 (D. Mass. June 11, 2010); Humana Found., Inc. v. Cantella & Co., No. 2000-CV-12393-ML, 2000 WL 33774752, at *3 (D. Mass. Nov. 17, 2000).

It is undisputed that a few months after Mary Consolo's death, Bank of America sent a letter informing Mary Consolo's estate that the loan was due and payable due upon Mary's death in 2012. D. 52-1 at 25. It is also undisputed that on April 17, 2012, Consolo acknowledged Bank of America's correspondence. Id. at 26; D. 52-2 at 134. Consolo, therefore, was on notice that an alleged harm had occurred at least by April 17, 2012. Consolo, however, filed the instant action on April 23, 2015 which was over three years after he should have known about the harm. The Court recognizes that "the discovery rule ordinarily involves questions of fact and therefore in most instances will be decided by the trier of fact." Genereux, 577 F.3d at 360. Indeed, "[d]etermining when a plaintiff had notice of the likely cause of [an] injury is one example of such a [factual] determination." Id. Here, there is no date later than April 17, 2012 that could serve as the date of sufficient notice where Consolo himself acknowledged the Bank of America correspondence informing him that the loan was due and payable.[5] As such, the negligent misrepresentation claim is time barred and summary judgment is GRANTED as to this claim.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion for summary judgment, D. 50.

---

[5] One of the elements of negligent misrepresentation under Massachusetts law is that the plaintiff justifiably relied on the defendant's misrepresentation. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 41 (1st Cir. 1998). Because Consolo did not justifiably rely on Keough's statements, as discussed above as to the promissory estoppel claim, he cannot make out a claim for negligent misrepresentation on the merits, even as this claim is also time barred, as discussed above.

15

**So Ordered.**

    /s/ Denise J. Casper
    United States District Judge